Donald G. Grant, P.S.
Attorneys and Counselors at Law
1700 Main Street, Suite 245
Washougal, WA 98671
TEL:  (360) 694-8488
FAX:  (360) 694-8688
E-MAIL:  don@dongrantps.com
Attorney for Plaintiff Gary Schull

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| GARY SCHULL,<br><br>              Plaintiff,<br><br>         v.<br><br>FINN'S AUTO BODY AND RESTORATION, INC., D/B/A FINN'S RESTORATION & CUSTOM, AN OREGON CORPORATION; DENNIS R. FINN; and MARGARET FINN<br><br>              Defendants | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**PARTIES**

*1.*  The Plaintiff GARY SCHULL is an individual resident of Clark County, Washington.

*2.*  Defendant FINN'S AUTO BODY AND RESTORATION, INC. (hereinafter "FINN") is a corporation organized under the laws of the State of Oregon with its registered office and principal place of business located at 310 Broadway St., Woodburn, Marion County, OR 97071, and doing business as FINN'S RESTORATION & CUSTOM.

*3.*  Defendant DENNIS R. FINN. (hereinafter "DENNIS") is an individual residing at 23532 S. Schieffer Rd., Colton, Clackamas County, OR 97017, and President of FINN.

4.  Defendant MARGARET FINN (hereinafter "MARGARET") is an individual residing at 23532 S. Schieffer Rd., Colton, Clackamas County, OR 97017, and the Secretary of FINN.

5.  DENNIS and MARGARET at all times relevant to this action held themselves out as agents of FINN.

6.  Plaintiff avers that FINN, through its agents, DENNIS and MARGARET, advised him that its agents and employees hold specialized knowledge, far superior to common hobbyists, as it relates to the restoration of cars.

## JURY TRIAL DEMAND

7.  Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

8.  Plaintiff hereby demands a trial by jury.

## THE AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANTS

9.  Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

10. Plaintiff is the owner of a 1956 Chevrolet Corvette bearing the VIN of E568003531 (hereinafter the "vehicle" or "subject vehicle").

11. On or about June 12, 2017, Plaintiff purchased the vehicle from MECUM Auctions for $71,500.00 including commissions.

12. At that time, the vehicle was roadworthy and drivable; to wit, the drivetrain operated without issues and the Plaintiff drove the vehicle to his home.

13. Plaintiff desired to confirm that the vehicle was safe and to have various issues repaired and, to this end, he brought the vehicle to J.C. Motors in Tualatin, Oregon.

*14.* At J.C. Motors, Plaintiff stated that he had a budget of approximately five thousand dollars ($5,000) and wanted the following issues inspected and/or repaired and services performed:

    a.  Oil change, fluids replaced;

    b.  Tune up the vehicle and lubricate;

    c.  Repair the air vent;

    d.  Repair the temperature gauge;

    e.  Inspect and repair loose steering;

    f.  Inspect transmission;

    g.  Repair a button for the convertible top lid;

    h.  Inspect vehicle for oil leaks; and

    i.  Repair interior door trim.

*15.* Due to the classic nature of the vehicle and its age, J.C. Motors recommended that the Plaintiff find a professional vehicle restorer.

*16.* In June 2017, Plaintiff met MARGARET at a car show in Turner, Oregon, where she was acting as an agent of FINN.

*17.* MARGARET represented orally and through FINN's promotional material that FINN "specializ[es] in High Quality Restorations" and possesses "32 Years Experience." *A true and correct copy of the Finn's Restoration & Custom flyer is attached hereto and made a part hereof and identified as Exhibit "A."*

*18.* Plaintiff informed MARGARET that he wanted a professional vehicle restorer to confirm that the vehicle was safe and perform those inspections, services and repairs as he had communicated to J.C. Motors. See ¶ 14.

19. Plaintiff represented to MARGARET that he expected these services to cost about five thousand dollars ($5,000).

20. MARGARET represented that FINN could restore the subject vehicle efficiently and at a high quality.

21. Based on MARGARET'S representations, Plaintiff met with DENNIS at the business location of FINN.

22. Plaintiff reiterated those task and services that he required the vehicle to ensure that the vehicle was safe and that his budget was approximately five thousand dollars ($5,000.00).

23. Plaintiff instructed FINN on numerous occasions that he wanted the vehicle to remain as original as possible; so existing parts should be repaired if possible or replaced with aftermarket reproduction parts.

24. On or about July 13, 2017, as a result of DENNIS's and MARGARET's representations, Plaintiff signed an unintegrated agreement with FINN. *A true and correct copy of Customer Contract Agreement is attached hereto and made a part hereof and identified as Exhibit "B."*

25. The agreed upon scope of work was for the following:

    a. Remove the body from the chassis;

    b. Re-paint the engine;

    c. Replace the engine seals;

    d. Diagnose and repair a transmission leak;

    e. Replace the fuel line;

    f. Examine the chassis;

g.   Repair the temperature gauge;

h.   Diagnosis and repair electrical issues in the dashboard;

i.   Conduct a safety and mechanical inspection; and

j.   Clean the engine compartment.

26. FINN provided the Plaintiff with a writing identifying the vehicle, containing the date the Defendants' were delivered the vehicle, and listing the repairs to be done. See ¶ 24. *A true and correct copy of work order is attached hereto and made a part hereof and identified as Exhibit "C."*

27. The contract requires that changes from the scope of work are only permitted upon written orders. *See Exhibit "B," referenced above.*

28. FINN's contract and work order, prepared by DENNIS, does not provide any estimate for the vehicle restoration and, in fact, specifically states that the FINN refused to provide any estimate. *See Exhibits "B" and "C."*

29. DENNIS assured the Plaintiff that, despite the boilerplate of the agreement and work order, the five-thousand-dollar ($5,000) budget of the Plaintiff would be respected.

30. As such, it is no coincidence that the deposit that the Plaintiff was required to pay was five thousand dollars ($5,000) and the Plaintiff did pay this sum to FINN.

31. At that time, Plaintiff accepted these promises and paid the demanded sum. Furthermore, at all times thereafter, the Plaintiff paid FINN for its services in a timely manner. *A true and correct copy of Plaintiff's accounting of payments is attached hereto and made a part hereof and identified as Exhibit "D."*

## THE RESTORATION PROJECT

*32.* Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

*33.* Without providing a written work order or estimate, DENNIS convinced Plaintiff to acquiesce to extra work that includes, but is not limited to the following:

    a.   Blast and powder-coat the frame;

    b.   Install a new exhaust system;

    c.   Install new brake and hydraulic lines;

    d.   Install new rubber mounts;

    e.   Install metal plates behind the driver and passenger door hinges; and

    f.   Use non-reproduction or non-original parts.

*34.* Without Plaintiff's permission and a written work order, FINN's unauthorized work includes, but is not limited to the following:

    a.   Performed numerous amounts of unexplained fiberglass work on the engine side of the vehicle's firewall and inner left, front fender;

    b.   Installed incorrect fuel lines;

    c.   Painted the fins on the valve covers;

    d.   Mounted the vehicle on a "jig" and, in doing so, fractured the fiberglass; and

    e.   Completely disassembled the vehicle.

*35.* In the summer of 2019, Plaintiff inspected the Defendants' progress in restoring the subject vehicle and, when attempting to operate the vehicle, the transmission began hemorrhaging fluid. Plaintiff instructed FINN to repair the damage and FINN promised to do so.

*36.* By October 2, 2019, the transmission had not yet been repaired.

**PAINTING THE VEHICLE**

*37.* Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

*38.* Also, by the late summer of 2019, Plaintiff had spent approximately seventy-five thousand dollars ($75,000) and the vehicle's restorations remained incomplete.

*39.* At that time, Plaintiff had decided that he would no longer invest in FINN's services.

*40.* At that time, DENNIS persuaded the Plaintiff to allow FINN to paint the vehicle which would include sanding and repairing cracks in the fiberglass.

*41.* DENNIS represented that that the entire cost of painting the vehicle and repair the fractures in the fiberglass would cost between $5,000 and $10,000.

*42.* In September 2019, DENNIS represented that the vehicle could only be repainted properly if all older coats of paint were removed.

*43.* DENNIS demanded that the Plaintiff provide an additional $3,000 to $4,000 to complete sanding the vehicle, notwithstanding that the Plaintiff still had approximately $4,000 credit with FINN.

*44.* Instead, without authorization, by March 25, 2020, FINN had completely disassembled the vehicle and begun to sand off the old paint. See ¶ 34(e).

*45.* Shortly thereafter, DENNIS demanded an additional $13,000.00 to paint the vehicle, said sum not inclusive of the time and labor to reassemble the vehicle and make it drivable again.

*46.* In summary, DENNIS ultimately demanded a total of approximately $27,000 to paint the vehicle despite his initial promise to so for no more than $10,000.

## THE DEFENDANTS' ACTIONS

*47.* Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

*48.* From the Plaintiff's first deposit and onward and for almost two years, the Defendants engaged in a series of unauthorized labor and repairs accompanied by bulk billing that obfuscated the nature of the work performed, hours of labor for each task as well as the hourly rate charged. *A true and correct copy of the Defendants' billing records are attached hereto and made a part hereof and identified as Exhibit "E."*

*49.* Defendants' billing exhibits a pattern of bulk billing, unnecessarily expensive repairs and unnecessary billing.

*50.* Primarily, the industry standards base billing based on how many hours it takes to perform a specific task.  On the invoices, the column labeled "time" is often paired with a bulk listing of numerous tasks.

*51.* Furthermore, the Defendants charged Plaintiff for such tasks as:

   a.  Travel to NAPA or other local hardware stores for parts, *see Exhibit "E," referenced above*:

      i.  On or about September 5, 2017, Defendants billed Plaintiff for their time in driving to NAPA to unsuccessfully "try and rent a steering wheel puller;"

      ii.  On or about November 20, 2018, Defendants billed Plaintiff for their time in driving to NAPA to acquire electrical tale and dielectric grease;

      iii.  On or about March 18, 2019, Defendants billed Plaintiff for their time in driving to NAPA and GW Hardware to acquire a hose elbow and lock washer;

      iv.  On or about March 27, 2019, Defendants billed Plaintiff for their time in driving to NAPA to acquire an anti-vibration pad for the fuel tank; and

      v.  On or about May 8-9, 2019, Defendants billed Plaintiff for their time in driving to NAPA for parts;

b.  FINN often charged Plaintiff its full $65.00 per hour rate in part for mundane tasks, such as storing parts, cleaning, vacuuming and sweeping the floor. *See Exhibit "D,"* at 9/17/2017, 10/17/2017, 10/24/2017, 10/26/2017, 11/1/2017, 11/6/2017, 11/7/2017, 11/8/2017, 11/16/2017, 12/10/2019 and 1/7/2020.  *See Exhibit "D," referenced above;* and

c.  On or about May 2, 2019, Defendants billed Plaintiff to move his vehicle from the rack to make room for another customer's vehicle; *See Exhibit "E," referenced above*; and

d.  FINN charged Plaintiff to repair parts damaged while in their possession, by way of example, on or about 11/29/2017, FINN billed Plaintiff to re-sandblast parts that it had let rust while in its possession. *See Exhibit "E," referenced above.*

52. The Defendants purposely and consistently fail to identify the parts provided or purchased and omit all identification information related to the parts used, making it

impossible to check whether the parts were appropriate for the vehicles and whether their value was consistent with the invoices.

53. Contrary to their representations, the Defendants used inexperienced labor and billed Plaintiff for the research and education of the same; to wit; *see Exhibit "E," referenced above*:

  a.  On or about September 1, 2017, "Darren" had to research how to remove the body from the vehicle;

  b.  On or about September 4, 2017, "Darren" had to further research disassembly procedures;

  c.  On or about September 5, 2017, "Darren" could not remove the shifter ball and splash shields without referencing restoration manuals;

  d.  On or about September 6, 2017, "Darren" had to research the location of the bolts underneath the gas tank;

  e.  On or about October 19, 2017, "Darren" had to research windshield wiper operation with the cable transmission setup;

  f.  On or about October 25, 2017, "Darren" had to consult with "Jim K., a corvette specialist;

  g.  On or about October 26 and 31 of 2017, "Darren" researched parts to be ordered for the vehicle's chassis and suspension;

  h.  On or about November 6, 2017, "Darren" was still researching parts to be ordered for the vehicle's chassis and suspension;

  i.  On or about November 6, 2017, "Darren" also researched rear axle removal;

  j.  On or about November 7, 2017, "Darren" researched how to restore a chassis;

k.  On or about April 10, 2018, "Curtis" had to review "Darren's" list of parts needed for the vehicle's chassis parts and revised it;

l.  On or about April 12, 2018, "Curtis" had to research necessary "nuts and bolts" and their locations;

m.  On or about October 8, 2018, "George" was trying to "figure out options for gearbox/steering column mounting issues";

n.  On or about March 28, 2019, despite "Darren having performed this research in 2017, "George" also had to research wiper parts and cable routing for the switch and washer pump;

o.  On or about April 23, 2019, "George" had to research the necessary parts for the power top and consult with MARGARET regarding the same;

p.  On or about May 14, 2019, "George" had to research parts needed for the vehicle;

q.  On or about May 21, 2019, "George" had to research parts needed for the vehicle;

r.  On or about August 14, 2019, "George" had to research transmission leak issues; and

s.  On or about December 9, 2019, "Thomas L." billed Plaintiff for the time that "Craig" and "Troy" taught him how to sand paint from the vehicle.

54. By March 25, 2020, the vehicle still unfinished and completely dissembled, making it virtually impossible to remove from their premises without significant cost, expense and labor.

**THE RESULT OF THE DEFENDANTS' FAILURE TO PERFORM**

55. Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

56. After two years and $92,095.77, Plaintiff received his vehicle in pieces.

57. A current appraisal of the vehicle finds that its market value is approximately $42,500.00 but will require "significant capital investment in order to comply with state safety regulations." *A true and correct copy of the appraisal is attached hereto and made a part hereof and identified as Exhibit "F."*

58. Upon information and belief, the numerous vehicle parts and components are missing.

59. Plaintiff will be forced to expend considerable funds to simply to put the vehicle back into the condition it was when the FINN began the restoration.

60. By letter dated January 13, 2021, Plaintiff demanded the return of all sums paid for the repairs of his vehicle.

**COUNT I**
**VIOLATION OF THE UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW**
**(Plaintiff v. All Defendants)**

61. Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

62. Defendants' violation of ORS 646.608(1)(e), (g), (i), and (u), 646A.482(1) and 646A.490(1)(a), as alleged herein were "willful" because Defendants knew and should have known its conduct constituted unlawful trade practices, as Defendants were aware Oregon law prohibited false representations in connection with vehicle restoration and mechanic services.

63. Defendants have, among other things, double billed the Plaintiff for labor, resulting in the Defendants representing that repairs have been performed, when they, in fact, have not.

64. Throughout the project, the Defendants' used their unorthodox accounting to prevent the Plaintiff from clearly understanding all of the labor performed on his vehicle, the source of the parts supplied or even where labor was outsourced. *See Exhibit "D."*

65. Defendant has also invoiced the Plaintiff for repairs in a manner that fails to give Plaintiff notice of whether he is being billed at any agreed upon rate and how many hours the Defendant dedicated to this labor.

66. Defendants' conduct as alleged herein violated ORS 646.608(1)(e) because Defendants represented that FINN had the skills, employees and tools to restore the subject vehicle and bill fairly and properly for those services, when in fact, FINN employed novices or was otherwise incapable of repairing the subject vehicle.

67. Defendants' conduct as alleged herein violated ORS 646.608(1)(g) because Defendants represented that FINN possessed the skills, employees and tools to restore the subject vehicle with a high degree of skill, when in fact, FINN lacked the skill necessary to restore the subject vehicle

68. Defendants' conduct as alleged herein violated ORS 646.608(1)(i) because Defendants represented that FINN would be able to restore the subject vehicle with a high degree of skill and bill fairly and properly for those services, when in fact, FINN never intended to provide competent services.

69. Defendants' conduct as alleged herein violated ORS 646.608(1)(u) because the Defendants' misrepresentations regarding its ability and intent to restore the subject vehicle was unfair and deceptive conduct in the motor vehicle restoration trade.

70. Defendants' conduct as alleged herein violated ORS 646A.482(1) because the Defendants failed to prepare and provide a copy of an estimate to the Plaintiff.

71. Defendants' conduct as alleged herein violated ORS 646A.490(1)(a) because the Defendants charged the Plaintiff for work that was not performed on the subject vehicle.

72. Defendants' unlawful trade practices directly and proximately caused the Plaintiff to incur ascertainable economic loss because Plaintiff paid $92,095.77 for restoration services that left his vehicle in poor condition and in pieces.

73. Defendants' unlawful trade practices also directly and proximately caused Plaintiff to suffer frustration, wasted time, and annoyance.

74. Defendants' disregard for Oregon's Unlawful Trade Practices Act stood to give it an unfair advantage because it is able to lure customers away from its competitors based on false promises.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant as follows:

    a.  Money judgment against Defendants in favor of Plaintiff for actual damages in a sum no less than $93,000.00;

    b.  Money judgment against Defendants in favor of the law firm of Donald G. Grant, P.S., for reimbursement of its reasonable attorneys' fees and costs in this case;

c. Punitive damages for fraud and actual malice and/or a wanton and willful disregard of the Plaintiff;

d. Costs of litigation, including court costs; and

e. Such other relief as the court may deem just and appropriate.

## COUNT II
## FRAUD
### (Plaintiff v. All Defendants)

75. Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

76. Incorporating the allegations set forth in Count I, above, the Plaintiff states that these actions constitute fraud.

77. Defendant fraudulently induced Plaintiff to enter into a contract for the Defendants' vehicle restoration service by knowingly making material representations of material fact as noted herein. At the time of making the representations, the Defendants knew or should have known that the representations were false, and that Plaintiff would not have entered into the agreement had Plaintiff known that the representations were false.

78. At the time of the Defendants' solicitation, the Plaintiff was a vulnerable and trusting layman in the world of automotive repairs and had no knowledge that the Defendants had no intention of completing his vehicle's restoration in a timely manner or for a reasonable fee, assuming that they intended to complete the project at all.

79. Instead, the Defendants intended to coerce and defraud the Plaintiff for their own financial gain; to wit, (1) the Defendants represented that repairs have been performed, when they, in fact, have not; (2) the Defendants misrepresented the nature of the

repairs performed in order to charge more than the value of their services; and (3) the Defendants used invoices intended to mislead the Plaintiff as to the work actually performed and the progress of the project.

80. The misrepresentations of the Defendant were intentional, material, and were egregious violations of Plaintiff's rights who at all times acted in a reasonable and prudent manner and who was ignorant of the falsity of the representations.

81. Defendant's conduct was reckless and exhibits an extreme ambivalence and haphazard method which Defendant promised to avoid when restoring the Plaintiff's vehicle.

82. Plaintiff justifiably relied upon the professionals employed or working on behalf of the Defendants.

83. But for the falsity of the representations, Plaintiff would not have agreed to retain FINN's services. As a result of his reliance on the truth of the material terms of the agreement and Defendants' representations, Plaintiff has been damaged as set forth herein, and said damages directly result from the acts and omissions of Defendants and their agents.

84. The Plaintiff suffered damages of at least $93,000.00.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant as follows:

    a.  Economic damages of at least $93,000.00;

    b.  Punitive damages for fraud and actual malice and/or a wanton and willful disregard of the Plaintiff;

    c.  Costs of litigation, including court costs; and

    **d.**  Such other relief as the court may deem just and appropriate.

**COUNT III**
**CONVERSION**
**(Plaintiff v. Finn's Auto Body & Restoration, Inc.)**

85. Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

86. Defendant's retention of the funds paid for the botched repairs after Plaintiff's request for its return constitutes conversion.

87. Defendant has intentionally exercised dominion and control over Plaintiff's money that so seriously interferes with Plaintiff's right to its possession such that Defendant should be required to pay Plaintiff the full value of the Plaintiff's $92,095.77 in payments.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant as follows:

    a.  Compensatory damages of at least $93,000.00;

    b.  Costs of litigation, including court costs; and

    **c.**  Such other relief as the court may deem just and appropriate

**COUNT IV**
**BREACH OF CONTRACT**
**(Plaintiff v. Finn's Auto Body & Restoration, Inc.)**

88. Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

89. The contract by and between the parties is oral and is not integrated.

90. The agreement, more particularly outlined above, by and between the Plaintiff and Defendant, was that the Defendants would make only necessary repairs to the subject vehicle for agreed upon sums of money.

COMPLAINT - 17

91. Plaintiff fulfilled all his obligations and paid FINN all sums of money due and owed for the repair work that was alleged to have been performed.

92. As alleged herein, Defendant breached this agreement by either performing repairs in an unworkmanlike manner, by performing unnecessary repairs and by performing repairs not authorized.

93. As a direct and proximate result of the breach of the contract by Defendant, Plaintiff has sustained substantial damage and injury, including but not limited to, the loss of at least $93,000.00 plus costs and expenses.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant as follows:

    a.  Compensatory damages of at least $93,000.00;

    b.  Costs of litigation, including court costs; and

    **c.**  Such other relief as the court may deem just and appropriate.

## COUNT V
## UNJUST ENRICHMENT
### (Plaintiff v. Finn's Auto Body & Restoration, Inc.)

94. Plaintiff hereby incorporates by reference all previous allegations as though fully set forth herein.

95. Plaintiff has provided Defendant with substantial money benefits of $92,095.77 of which a significant sum represents overpayment due to the Defendants' deceptions.

96. Under the circumstances, the Defendant is not legally entitled to these funds.

97. Under the circumstances, it is unjust and inequitable that the Defendant be permitted to retain these benefits.

98. Defendant has been unjustly enriched by the payments from Plaintiff.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant as follows:

    a.   Compensatory damages of at least $93,000.00;

    b.   Costs of litigation, including court costs; and

    c.   Such other relief as the court may deem just and appropriate.

Dated this 28th day of January 2021.

DONALD G. GRANT, P.S.

/s/ Donald G. Grant
Donald G. Grant, OSBA NO. 860417
Of Counsel for Plaintiff Gary Schull

Donald G. Grant, P.S.
Attorneys and Counselors at Law
1700 Main Street, Suite 245
Washougal, WA 98671
TEL:  360-210-5000
FAX:  360-694-8688
E-MAIL: don@dongrantps.com

COMPLAINT - 19

## VERIFICATION

GARY SCHULL hereby states that he is the PLAINTIFF in this action and that the

statements of fact made in the foregoing COMPLAINT are true and correct to the best of his

information and belief.

Date: January 28 , 2021.

_____

GARY SCHULL

COMPLAINT - 20